**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0297-23

TINEO JOHNNY,

      Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____

Submitted April 8, 2025 – Decided August 5, 2025

Before Judges Gilson and Bishop-Thompson.

On appeal from the New Jersey Department of Corrections.

Tineo Johnny, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Andrew D. Spevack, Deputy Attorney General, on the brief).

PER CURIAM

Tineo Johnny, an inmate at New Jersey State Prison in Trenton, appeals from the Department of Corrections' (DOC) decision denying his request for back wages for his provisional assignment in the officers' barbershop. Johnny argues the DOC erred in denying him wages for the seven-month period that he was assigned to that position. We reject that contention and affirm.

From January 13, 2023, to June 9, 2023, Johnny was housed and worked in West Unit 2-Right as a unit barber earning $2.50 per day. According to Johnny, he was offered an assignment in the officers' barbershop, where he would have earned $6 per day.

On June 26, 2023, Johnny began his provisional assignment at the officers' barbershop. On May 13, 2023, Johnny submitted an inmate grievance form, alleging that he was paid as a unit barber while provisionally assigned to the officers' barbershop. He therefore requested wages for that assignment. In response to the grievance, the DOC directed Johnny to speak with his detail supervisor, who could submit an adjustment to his payroll for any error.

According to Johnny, he was terminated from the officers' barbershop on June 29, 2023, which was disputed by the DOC. Thereafter, Johnny submitted three additional grievances. Johnny grieved that he had not received payment for his seven-month assignment in the officers' barbershop. The DOC redirected

Johnny to complete a supplemental pay form to process his pay as required by the Business Office. Johnny was again directed to contact his detail supervisor to submit the adjustment to his payroll.

The next grievance reframed the issue as a request for additional pay for the seven-month work assignment in the officers' barbershop. The DOC denied this grievance, stating Johnny was assigned to the officers' barbershop on a "[trial] basis" and was paid until he "quit."

Johnny's last grievance requested the name of his barbershop supervisor. He also claimed that he was never told that he had to "work as a volunteer" for six months before he earned full pay for his assignment in the officers' barbershop. Johnny further claimed that he did not receive any pay while in the provisional assignment. The DOC denied the grievance, stating that Johnny was "appropriately compensated for [his] assigned job." Johnny appealed this determination.

In an August 31, 2023 final agency decision, the DOC denied Johnny's last grievance. The DOC explained that Johnny was provisionally assigned to the officers' barbershop to assess whether his barbering skills were "good enough" for placement as a full-time barber. The DOC further explained to Johnny that he was explicitly told by a lieutenant that he would remain at the

3

unit barber pay rate until he was no longer a provisional officers' barber. Johnny was told that he would not receive any "perceived" back pay because he voluntarily resigned and would not be hired as an officers' barber.

Our review of administrative actions is "severely limited." George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994). Accordingly, "our role is limited to determining: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion." Conley v. Dep't of Corr., 452 N.J. Super. 605, 613 (App. Div. 2018) (citing In re Stallworth, 208 N.J. 182, 194 (2011)).

"We will disturb an agency's adjudicatory decision only upon a finding that the decision is 'arbitrary, capricious or unreasonable,' or is unsupported 'by substantial credible evidence in the record as a whole.'" Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 237-38 (App. Div. 2019) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). The challenger of the agency decision bears the burden of proving the decision was "arbitrary, unreasonable or capricious." In re M.M., 463 N.J. Super. 128, 136 (App. Div. 2020) (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)).

We are not bound by an agency's statutory interpretation or other legal determinations and review those de novo. Conley, 452 N.J. Super. at 613.

Johnny argues that he should be paid for his provisional assignment in the officers' barbershop, even if he voluntarily resigned, because the DOC has a duty to pay him for his labor. To support his argument, Johnny relies on the Workers' Compensation Act, N.J.S.A. 34:15-6, which governs compensation for work-related injuries arising out of and in the course of employment. He also argues that the DOC's Job Change form did not state that an inmate is assigned on a provisional basis and must complete the provisional period before earning wages for that job title.

We conclude Johnny's arguments are without merit. First, Johnny's reliance on the worker's compensation statute is misplaced, as neither his grievance nor his appeal arises from a work-related injury and therefore falls outside the scope of that statute.

Second, Johnny mistakenly assumes that an inmate's work assignment cannot be classified as a provisional work assignment. It is well settled that inmates do not have a liberty interest in any particular job or wage that can be earned by performing a prison work assignment. Lorusso v. Pinchak, 305 N.J. Super. 117, 119 (App. Div. 1997) (citing James v. Quinlan, 866 F.2d 627, 629

5

(3d Cir. 1989)).  "[I]nmates entering prison have no concrete expectation of being given a job assignment."  Ibid.  Accordingly, given the circumstances involved in the administration of prisons, the classification of inmates, including the type of prison job they may be assigned, is left to the sound discretion of the DOC.  Jenkins v. Fauver, 108 N.J. 239, 253 (1987).

We conclude Johnny had no liberty interest in the provisional assignment in the officers' barbershop, and therefore that provisional assignment at the unit barber wages did not provide him with a basis for asserting a viable claim for relief.  White v. Fauver, 219 N.J. Super. 170, 179-80 (App. Div. 1987) ("To obtain a protect[ed] right," an inmate must have "a legitimate claim of entitlement," not just "a unilateral expectation.").  Thus, we find no basis to disturb the DOC's decision denying Johnny's claim for back pay.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0297-23